IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

DEBRA DEANNA SHUPE,                )
                                   )
                Plaintiff,         )
                                   )
        v.                         )        1:14CV308
                                   )
DBJ ENTERPRISES, LLC,              )
DENNY'S CORPORATION,               )
DENNY'S, INC., DFO, LLC,           )
and YONG BYNUM,                    )
                                   )
                Defendants.        )


## MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

Debra Deanna Shupe ("Plaintiff") makes six claims for relief against Defendants DBJ Enterprises, LLC ("DBJ"), Denny's Corporation ("Denny's"), Denny's Inc. ("DI"), DFO, LLC ("DFO"), and Yong Bynum ("Bynum") (collectively "Defendants") in her Amended Complaint. (Doc. 15.)  Those six claims allege: (1) Assault; (2) Battery; (3) False Imprisonment; (4) Intentional Infliction of Emotional Distress; (5) Wrongful Termination; and (6) violations of the Fair Labor Standards Act of 1938, codified as amended at 29 U.S.C. § 201 et seq. ("FLSA").

Presently before this court is a Second Motion to Dismiss submitted by Defendants. (Doc. 17.)[1] Plaintiff has submitted a Response (Doc. 19), and Defendants have submitted a Reply (Doc. 20). On January 15, 2015, this court entered an order that (1) notified the parties that this court was considering whether it could and, if so, should exercise supplemental jurisdiction over Plaintiff's claims based on state law, and (2) asked the parties to file supplemental briefing on the issue. (Doc. 21.) Plaintiff and Defendants have both submitted briefs in response to this order. (Docs. 22, 23.)

Accordingly, Defendants' Second Motion to Dismiss is ripe for judgment, and for the reasons stated herein, Defendants' Second Motion to Dismiss will be granted in part and denied in part.

## I.    BACKGROUND

While considering Defendants' Second Motion to Dismiss, this court accepts as true all of the factual contentions made in Plaintiff's Amended Complaint (Doc. 15). See Ashcroft v.

---

[1] Defendants filed their First Motion to Dismiss (Doc. 13) on May 26, 2014, and Plaintiff then filed an Amended Complaint (Doc. 15). Thus, Defendants' First Motion to Dismiss will be denied as moot. See Matthews v. Consol. Grp. Claims, Inc., No. 1:98CV00268, 1998 WL 1037919, at *3 (M.D.N.C. Dec. 18, 1998).

*Iqbal*, 556 U.S. 662, 678 (2009).  A brief summary of those facts follows.

Plaintiff was a General Manager in a Denny's franchise restaurant (the "Restaurant") owned by Defendant DBJ and franchised by any or all of Defendants Denny's, DI, or DFO. (Am. Compl. (Doc. 15) ¶¶ 14-16.)  At the time of the incidents outlined in the Amended Complaint, Defendant Bynum was the District Manager covering the Restaurant and was the co-owner of Defendant DBJ.  (Id. ¶¶ 18-19.)  Defendants Denny's, DI, and/or DFO have "Guiding Principles" and a "Code of Conduct" that govern the activities of all franchisees.  (Id. ¶ 20.)

Defendant Bynum "constantly and consistently berated, humiliated, disrespected and mistreated" Plaintiff (id. ¶ 22), ultimately culminating in an altercation on February 8, 2014. (Id. ¶ 25.)  During the altercation, Plaintiff quit her employment at the Restaurant.  (Id. ¶ 28.)  As Plaintiff attempted to leave, Defendant Bynum blocked the doorway and pulled the back of Plaintiff's jacket, causing injuries to Plaintiff. (Id. ¶¶ 29-39; Graham Police Department Incident/Investigation Report (Doc. 15-1) at 2-3.)

Plaintiff also alleges that Defendants did not pay Plaintiff for overtime work completed, often demanding that

Plaintiff work double shifts in excess of eight hours per day for six to seven days per week - totaling up to 80 hours per week - without compensating Plaintiff accordingly. (Am. Compl. (Doc. 15) ¶¶ 91, 92, 94.) Additionally, one or all of Defendants forced Plaintiff to fill in for absent waitresses and log all sales under the names of those waitresses instead of under her own name. (Id. ¶¶ 95, 97.) Although she was nominally in a managerial role, Plaintiff alleges that she had no managerial authority and was treated, for all intents and purposes, as a non-managerial employee. (Id. ¶¶ 86-87.)

## II. **LEGAL STANDARD**

Defendants have moved to dismiss Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6). In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the trial court must accept factual allegations as true. Erickson v. Pardus, 551 U.S. 89, 91 (2007). A motion under Rule 12(b)(6) is proper when the complaint's factual allegations fail as a matter of law to state a plausible claim for relief. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

However, a court is not required to accept "[t]hreadbare recitals of the elements of a cause of action supported by mere conclusory statements." Id.

Courts considering a motion to dismiss pursuant to Rule 12(b)(6) generally cannot reach the legal adequacy of an affirmative defense, such as an affirmative assertion that a claim is barred by the statute of limitations. Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007) (en banc). "But in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." Id.; Suarez Corp. Indus. v. McGraw, 125 F.3d 222, 229 (4th Cir. 1997). In other words, in order to grant a motion to dismiss alleging an affirmative defense, the complaint must be self-defeating. See Goodman, 494 F.3d at 464 ("This principle only applies, however, if all facts necessary to the affirmative defense 'clearly appear[] on the face of the complaint.'" (alterations in original) (quoting Richmond, Fredericksburg & Potomac R.R. v. Forst, 4 F.3d 244, 250 (4th Cir. 1993))).

Additionally, a federal court must also, in every case, evaluate whether it has jurisdiction to hear the case. Davis v.

Pak, 856 F.2d 648, 650 (4th Cir. 1988).  Federal courts have

original jurisdiction over all civil actions "arising under"

federal law.  28 U.S.C. § 1331.  Where federal courts lack such

jurisdiction over a claim, those courts may exercise

jurisdiction if there is diversity of citizenship between the

parties, subject to the $75,000 amount-in-controversy

requirement, see 28 U.S.C. § 1332, or through supplemental

jurisdiction where state and federal claims may be heard

together, see 28 U.S.C. § 1367.

## III. <u>ANALYSIS</u>

For the following reasons, this court finds that

Plaintiff's First through Fifth Claims for Relief should be

dismissed for lack of jurisdiction but that Defendants' Second

Motion to Dismiss (Doc. 17) should be denied as to Plaintiff's

Sixth Claim.  Because Plaintiff's Sixth Claim is based on

federal law, this court analyzes this claim first to determine

whether Plaintiff has stated a plausible claim for relief.

### A.    <u>Sufficiency of FLSA Pleading</u>

Plaintiff alleges a violation of FLSA in her Sixth Claim

for Relief, the "FLSA claim."  (Am. Compl. (Doc. 15) ¶¶ 85-100.)

FLSA dictates that certain employees who are engaged in

interstate commerce are entitled to overtime pay, and any

violation of this mandate gives rise to a private cause of action against the employer.  29 U.S.C. §§ 207, 216(b).

Plaintiff asserts that her Amended Complaint states a plausible FLSA claim.  (Pl.'s Resp. & Mem. of Law in Opp'n to Defs.' Second Mot. to Dismiss ("Pl.'s Resp.") (Doc. 19) at 12.) An FLSA claim is sufficiently pled if it identifies the specific sections of FLSA that are at issue, along with the nature of the violations and the time period involved.  Farrell v. Pike, 342 F. Supp. 2d 433, 438 (M.D.N.C. 2004) (citing Hodgson v. Virginia Baptist Hosp., Inc., 482 F.2d 821, 823–24 (4th Cir. 1973)); see also Hawkins v. Proctor Auto Serv. Ctr., LLC, No. RWT 09CV1908, 2010 WL 1346416, at *1 (D. Md. Mar. 30, 2010) (requiring that a plaintiff plead (1) that she worked overtime hours without compensation; and (2) that the employer knew or should have known that she worked overtime but failed to compensate her accordingly).

Here, Plaintiff's Amended Complaint states the general time period she was employed; that she was a general manager – but did not have supervisory authority – in the Restaurant owned, managed, and/or franchised by Defendants; that for a substantial number of days she worked in excess of eight hours, often working double shifts in a single day without being compensated

-7-

for the extra work; and that on many occasions, she worked in excess of forty hours during a week and yet did not receive wages as required by 29 U.S.C. § 207. (Am. Compl. (Doc. 15) ¶¶ 86-100.) Other courts have found similar allegations sufficient to state a claim under FLSA. See, e.g., Farrell, 342 F. Supp. 2d at 437.

Defendants make two arguments in an attempt to show that Plaintiff has not stated a plausible FLSA claim. First, Defendants concede that Defendants Bynum and DBJ were Plaintiff's employer, but deny that Denny's, DI, or DFO were Plaintiff's employer within the meaning of FLSA. (Defs.' Mem. in Supp. of Mot. to Dismiss ("Defs.' Mem.") (Doc. 18) at 11, 16-18.) This court finds it is unable to decide this issue at the motion-to-dismiss stage of these proceedings.

An "employer" under FLSA is "any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ." 29 U.S.C. § 203(d). The Supreme Court has recognized that this definition has "striking breadth." Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 326 (1992). An individual may have multiple "employers" for the purposes of FLSA, such that "all joint employers are responsible, both individually and jointly, for compliance with all the applicable

provisions of [FLSA]." 29 C.F.R. § 791.2(a). In order to
evaluate whether a defendant is Plaintiff's employer for the
purposes of FLSA, the Fourth Circuit utilizes the "economic
realities" test. Schultz v. Capital Int'l Sec., Inc., 466 F.3d
298, 304-05 (4th Cir. 2006). This test calls for a six-factor
factual analysis wherein no one factor is dispositive. Id. One
of these six factors is "the degree of control that the putative
employer has over the manner in which the work is performed."
Id.; see also Haywood v. Barnes, 109 F.R.D. 568, 586 (E.D.N.C.
1986).

Plaintiff has alleged in her complaint that Defendants
Denny's, DI, and/or DFO (whichever was the franchisor of the
Restaurant) have significant control over day-to-day operations
through the "Guiding Principles" and "Code of Conduct" that they
required all franchisees and franchisee employees to follow.
(Am. Compl. (Doc. 15) ¶ 20.) While one factor alone is not
dispositive and consequently may not survive summary judgment,
see Schultz, 466 F.3d at 305, these facts accepted as true
demonstrate that Denny's, DI, and/or DFO exercised control over
Plaintiff and consequently that Plaintiff has stated a plausible

claim that Denny's, DI, and/or DFO were Plaintiff's employer

within the meaning of FLSA.[2]

Second, Defendants argue that Plaintiff is exempt from FLSA

as an employee in a "bona fide executive capacity." (Defs.'

Mem. (Doc. 18) at 11-12.) Similar to Defendants' first

argument, this court finds it is unable to decide this issue at

the motion-to-dismiss stage of these proceedings. Defendants'

argument that Plaintiff occupied a "bona fide executive

capacity" is an affirmative defense that must be proven by

"clear and convincing evidence." See Altemus v. Fed. Realty

Inv. Trust, 490 Fed. App'x 532, 535 (4th Cir. 2012) (citing

Clark v. J.M. Benson Co., Inc., 789 F.2d 282, 286 (4th Cir.

1986)). The only way that this court could make such a finding

when considering a motion to dismiss is "if all facts necessary

to the affirmative defense clearly appear on the face of the

---

[2] Defendants cite Benshoff v. City of Virginia Beach, 180
F.3d 136 (4th Cir. 1999), for the proposition that Defendants
Denny's, DI, and DFO lacked sufficient control and supervision
to be considered Plaintiff's "employer" under FLSA. (Defs.'
Mem. (Doc. 18) at 16-17.) While a correct point of law and a
correct reading of Benshoff in this court's estimation, the
Fourth Circuit in that case was reviewing the denial of summary
judgment, and as such, the Fourth Circuit could review the facts
related to control and supervision that had been discovered by
the parties. See Benshoff, 180 F.3d at 138. This court is not
in the same position and must merely determine whether Plaintiff
has stated a plausible claim that Defendants were her
"employer." As such, this court's decision is not in conflict
with Benshoff.

complaint." Goodman, 494 F.3d at 464 (quoting Richmond, Fredericksburg & Potomac R.R. v. Forst, 4 F.3d 244, 250 (4th Cir. 1993)) (alterations and quotation marks omitted).

In this case, Plaintiff has not filed such a self-defeating pleading.  Plaintiff has admitted that she held the position of "General Manager," but alleged that she had no authority to direct the work of other employees or to have input on the hiring or firing of employees.  (Am. Compl. (Doc. 15) ¶¶ 87, 88, 92.)  The regulations promulgated by the Department of Labor indicate that these powers are essential elements of the definition of "employee employed in a bona fide executive capacity."  See 29 C.F.R. § 541.100(a).  Additionally, Plaintiff has alleged that, despite her title, her primary duty was not "management of the enterprise in which the employee is employed."  See id.  These facts, taken as true, indicate that Plaintiff was not employed in a "bone fide executive capacity."

Therefore, based on the foregoing reasons, this court will not dismiss Plaintiff's Sixth Claim for Relief, the FLSA claim.

### B.   Lack of Jurisdiction over State Law Claims

Besides the FLSA claim, Plaintiff's remaining claims - her First, Second, Third, Fourth, and Fifth claims, collectively the "state law claims" - are based on North Carolina tort law.

Although Plaintiff's Amended Complaint fails to specify the
basis of this court's subject-matter jurisdiction over these
state law claims (see Am. Compl. (Doc. 15) ¶ 12),[3] Plaintiff
asserts that this court can exercise supplemental jurisdiction
pursuant to 28 U.S.C. § 1367.  (Pl.'s Br. in Supp. of the Court
Exercising Supplemental Jurisdiction ("Pl.'s Br.") (Doc. 23) at
1.)

     To exercise supplemental jurisdiction, this court must find
that the state law claims arise out of the "same case or
controversy" as the federal law claim.  See 28 U.S.C. § 1367(a).
The Supreme Court has explained that, in order to meet this
standard, both state and federal claims must "derive from a
common nucleus of operative fact."  City of Chicago v. Int'l
Coll. of Surgeons, 522 U.S. 156, 164-65 (1997) (quoting United
Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725 (1966)).  The

---

[3] Despite the fact that Defendants had not presented any
argument that this court lacked jurisdiction over the state law
claims, this court found it was still required to consider the
issue. See Davis v. Pak, 856 F.2d 648, 650 (4th Cir. 1988). This
court gave notice to the parties that it was considering whether
it has jurisdiction over the state law claims and requested
briefing on the issue, which the parties submitted.  (See Order
(Doc. 21).) In its order, this court recognized that it could
not exercise jurisdiction over the state law claims pursuant to
28 U.S.C. § 1332 because diversity was not "complete" among the
parties.  (See id. at 2); see also Wis. Dep't of Corr. v.
Schacht, 524 U.S. 381, 388 (1998). Accordingly, the parties have
confined their arguments to the issue of supplemental
jurisdiction.

Fourth Circuit, applying the Supreme Court's opinion in Gibbs, indicated that supplemental jurisdiction does not exist where one count is "separately maintainable and determinable without any reference to the facts alleged or contentions stated in or with regard to the other count."  Hales v. Winn-Dixie Stores, Inc., 500 F.2d 836, 848 (4th Cir. 1974).

Because this court has original jurisdiction over Plaintiff's FLSA claim, this court examines whether Plaintiff's First, Second, Third, and Fourth Claims - the "intentional tort claims" - and Plaintiff's Fifth Claim - the "wrongful termination claim" - are part of the same case or controversy as the FLSA claim.

### i.    Plaintiff's Intentional Tort Claims

In this case, Plaintiff's intentional tort claims stem from the allegedly tortious actions of Defendant Bynum on February 8, 2014.  Plaintiff alleges that Defendant Bynum engaged in conduct that amounted to assault, battery, false imprisonment, and intentional infliction of emotional distress.  (See Am. Compl. (Doc. 15) ¶¶ 25-40.)  Conversely, Plaintiff's FLSA claim is based on Plaintiff's pay package, lack of overtime pay, and excessive hours.  (See id. ¶¶ 86-100.)

-13-

Plaintiff attempts to persuade this court that her FLSA
claim and her intentional tort claims "are related to and
involve the manner in which she was treated by her employer over
the course of her employment, leading to her termination."
(Pl.'s Br. (Doc. 23) at 4.)  Plaintiff indicates that the "same
parties, witnesses, events, and work history will be involved
with the state law claims and the FLSA claim," but Plaintiff
does not identify which witnesses or events would be in common
between the different claims, nor does Plaintiff explain how her
work history would be relevant to her claims for battery,
assault, false imprisonment, or intentional infliction of
emotional distress.  (See id. at 2.)

Instead, it is evident from the face of the Amended
Complaint that the facts necessary to prove Plaintiff's
intentional tort claims are almost completely distinct from
those required to prove that Defendants committed FLSA
violations.  Even accepting as true that Defendants'
"systematic, ongoing, repetitive employer abuse . . . culminated
in a final climactic incident" on February 8 (id.) and that the
FLSA violations are part of the "employer abuse" that Plaintiff
alleges, the claims for relief are entirely separate and could
be maintained without reference to any of the same facts.  For

instance, Plaintiff's intentional tort claims will require proof of the altercation that occurred when Defendant Bynum "confronted Plaintiff and began yelling at Plaintiff about the performance of the employees working with Plaintiff" and will consider legal issues such as whether there was an actual or attempted offensive and harmful contact by Defendant Bynum. (See, e.g., Am. Compl. (Doc. 15) ¶¶ 25, 43, 52.)  The FLSA claim does not require any mention of the February 8 confrontation but instead will require proof of, among other things, the hours Plaintiff worked and the duties Plaintiff performed. Furthermore, the time period relevant to each claim is different, as Plaintiff's FLSA claim will examine the entire period of Plaintiff's employment until her resignation.  (See, e.g., id. ¶¶ 90-99.)  In contrast, the intentional tort claims are concerned with what occurred on a specific date, February 8, 2014, after Plaintiff had resigned her position.  Finally, Plaintiff has made clear that Defendant Bynum was responsible for the tortious conduct on February 8, but it is not clear from the allegations in the Amended Complaint who is ultimately responsible for the FLSA violations.  Regardless, Bynum is not identified as a defendant-employer for the FLSA claim; thus, the FLSA claim can stand without Bynum as a named Defendant.  These

distinctions between the facts relevant for the intentional tort
claims and the facts relevant for the FLSA claim indicate that
these claims do not share a "common nucleus of operative fact,"
and accordingly, this court does not have supplemental
jurisdiction over Plaintiff's intentional tort claims.  See,
e.g., Hales, 500 F.2d at 848; Sanders v. Duke Univ., 538 F.
Supp. 1143, 1147-48 (M.D.N.C. 1982) (finding that, in hearing
plaintiff's federal age discrimination suit, the court could not
exercise supplemental jurisdiction over plaintiff's claims that
defendant violated his contractual rights under North Carolina
law).

### ii.  Plaintiff's Wrongful Termination Claim

Plaintiff's wrongful termination claim[4] requires a more detailed
analysis, as it is somewhat unclear on what factual basis
Plaintiff makes these allegations.  If the only connection
between the FLSA claim and the wrongful termination claim is
that Defendants employed Plaintiff at the time of the alleged
FLSA violations and at the time of the alleged wrongful

---

[4] Plaintiff uses the title "Wrongful Termination" for the
Fifth Claim in her Amended Complaint.  Because Plaintiff "quit"
her position, (Am. Compl. (Doc. 15) ¶ 28), the more appropriate
term may be "constructive discharge," as Defendants suggest.
(See Defs.' Mem. (Doc. 18) at 10.)  However, this court will use
Plaintiff's terminology for the purposes of this Memorandum
Opinion.

termination, this court will not be able to exercise
supplemental jurisdiction over the wrongful termination claim.
Federal courts have been reluctant "to exercise supplemental
jurisdiction over state law claims and counterclaims in the
context of a FLSA suit," when "the only connection is the
employee-employer relationship."  See Williams v. Long, 558 F.
Supp. 2d 601, 604 (D. Md. 2008) (declining to exercise
supplemental jurisdiction over defendant's breach of contract,
breach of fiduciary duty, and invasion of privacy
counterclaims); see also Lyon v. Whisman, 45 F.3d 758, 762 (3d
Cir. 1995) (explaining that the employee-employer relationship
is an insufficient nexus between an FLSA claim and state
claims).[5]

In her brief on the question of supplemental jurisdiction,
Plaintiff asserts that there are "issues common to both the
federal and state law claims," specifically: (1) "the
Defendants' employment policies and procedures," (2) "issues

_____

[5] This court recognizes that the District of Columbia
Circuit found that the employment relationship can be a
sufficient factual basis to justify supplemental jurisdiction,
especially when considering the need for judicial economy,
convenience, and fairness to litigants.  See Prakash v. Am.
Univ., 727 F.2d 1174, 1183 (D.C. Cir. 1984).  Nonetheless, this
court finds Lyon to be the more persuasive authority, as it
appears to be more in line with the "case or controversy"
requirement of § 1367 and the Supreme Court's holding in Gibbs.

relating to the franchisee-franchisor relationship," and (3)
"Plaintiff's employment history at Denny's." (Pl.'s Br. (Doc.
23) at 3.) Although these issues may be common to both the FLSA
and the wrongful termination claims, these issues, if proven,
will only clarify the employer-employee relationship between
Plaintiff and the various Defendants. As found by other courts,
this connection is insufficient to come within the required
nexus that would allow this court to exercise supplemental
jurisdiction over the wrongful termination claim pursuant to 28
U.S.C. § 1367(a). Therefore, this court looks to whether there
is any other overlap between the facts necessary to prove
wrongful termination and those necessary to prove the FLSA
violations.

First, on the face of the Amended Complaint, it appears
that Plaintiff's wrongful termination claim is based on the
allegations made in Plaintiff's intentional tort claims. In her
Amended Complaint, Plaintiff asserts that Defendant Bynum's
actions "caused Plaintiff's employment to terminate," because
Plaintiff had "no choice but to sever the employment
relationship based on the assault, battery, false imprisonment,
harassment and emotional distress." (Am. Compl. (Doc. 15)
¶¶ 79-80.) Thus, Plaintiff's wrongful termination claim, as

alleged, is based on the same facts as Plaintiff's intentional
tort claims, not the FLSA claim.  As such, for the reasons
stated as to the intentional tort claims, there is no "common
nucleus of operative fact" between the wrongful termination and
FLSA claims that would warrant supplemental jurisdiction.

Second, Plaintiff's brief on the supplemental jurisdiction
issue argues that "the overall mistreatment of Plaintiff is a
key issue in the FLSA claim and the state tort claims."  (Pl.'s
Br. (Doc. 23) at 4.)  Therefore, Plaintiff contends that the
wrongful termination claim is based in part on the alleged FLSA
violations.  However, there are several reasons why, in spite of
Plaintiff's argument, this court finds that the wrongful
termination claim and the FLSA claim as alleged in Plaintiff's
Amended Complaint are not part of the same case or controversy.
For instance, Plaintiff does not explicitly tie the wrongful
termination claim to the FLSA violations in her Amended
Complaint, as there is no mention of the FLSA violations in
Plaintiff's wrongful termination claim.  (See Am. Compl. (Doc.
15) ¶¶ 78-84.)  The wrongful termination claim incorporates by
reference all of the intentional tort allegations set forth in
paragraphs 42 through 77, but not the FLSA allegations set forth
in paragraphs 85 through 100.  (See id. ¶ 78.)  While this could

seem like a mere technicality, the structure of Plaintiff's
Amended Complaint and the facts incorporated into Plaintiff's
FLSA claim demonstrate that the FLSA claim is distinct from the
allegations of tortious conduct outlined in the remainder of
Plaintiff's Amended Complaint.

Additionally, Plaintiff's statement of facts suggests that
Plaintiff's decision to resign was separate and distinct from
her current claim for an FLSA violation.  In the fact section of
Plaintiff's Amended Complaint, Plaintiff explains that she was
"constantly and consistently berated, humiliated, disrespected,
and mistreated by Defendants DBJ and Bynum" and then states that
Plaintiff "quit her job."  (Am. Compl. (Doc. 15) ¶ 22, 28.)
Throughout the Amended Complaint, Plaintiff does not assert that
the FLSA violations were part of the "mistreatment" that
Plaintiff alleges.  In her recitation of the facts surrounding
her resignation, Plaintiff claims she resigned after "Defendant
Bynum confronted Plaintiff and began yelling at Plaintiff about
the performance of the employees working with Plaintiff" and
after "Defendant Bynum called Plaintiff 'stupid,'" without any
mention of not being paid overtime.  (See id. ¶¶ 25, 27.)  In
her response to Defendant's Second Motion to Dismiss, Plaintiff
summarizes her wrongful termination claim by saying: "In short,

Plaintiff's employment terminated as a result of her refusing to allow herself to be abused physically and mentally.  Plaintiff asserts that it is against North Carolina public policy for employers to physically assault their employees."  (Pl.'s Resp. (Doc. 19) at 9.)  These presentations of the facts all indicate that the wrongful termination claim is predicated on Defendant Bynum's abusive behavior, (see id. ¶ 80), and is distinct from the FLSA allegations that Plaintiff did not receive adequate overtime pay.

Admittedly, there is a slight overlap between the FLSA claim and the wrongful termination claim.  For instance, Defendant Bynum's abusive conduct that allegedly led to Plaintiff's wrongful termination may have occurred around the same time as the FLSA violations, and Defendant Bynum's actions were at the center of both claims.  However, these claims relate to two separate issues that Plaintiff has not connected.  For instance, Plaintiff's wrongful termination claim would require proof of the deliberate steps taken by Defendant Bynum to make Plaintiff's employment condition intolerable.  See Whitt v. Harris Teeter, Inc., 165 N.C. App. 32, 50, 598 S.E.2d 151, 162-63 (2004) (McCullough, J., dissenting) (stating that, if North Carolina recognized a constructive discharge claim, it would

require proof of deliberateness and intolerability), adopted by, 39 N.C. 625, 614 S.E.2d 531 (2005) (per curiam). Plaintiff's FLSA claim will focus instead on matters such as Plaintiff's time records versus her testimony of the time she worked in excess of forty hours per week. Moreover, as with the intentional tort claims, Plaintiff's wrongful termination allegations focus on the events of February 8, whereas all alleged FLSA violations occurred before February 8. In sum, the events alleged in Plaintiff's wrongful termination claim are not relevant to Plaintiff's FLSA overtime claim, and Plaintiff's wrongful termination claim can be maintained without any mention of the FLSA claim. See Hales, 500 F.2d at 848; see also Rivera v. Ndola Pharmacy Corp., 497 F. Supp. 2d 381, 394 (E.D.N.Y. 2007). This court is not persuaded that the wrongful termination was part of the same case or controversy as the FLSA claim, and as a result, this court cannot exercise supplemental jurisdiction pursuant to § 1367(a).[6]

Even if § 1367(a) allowed this court to exercise jurisdiction over Plaintiff's state law claims, this court finds reason to use its discretion, as allowed under § 1367(c), to

---

[6] Because this court finds it does not have jurisdiction to hear Plaintiff's state law claims, this court will not consider Defendants' arguments that such allegations do not state a claim for relief. (See Defs.' Mem. (Doc. 18) at 3-11.)

decline to exercise supplemental jurisdiction.  Section 1367(c)

lists four factors that would justify a court's choice not to

exercise supplemental jurisdiction:

> (1) the claim raises a novel or complex issue of
> State law,

> (2) the claim substantially predominates over the
> claim or claims over which the district court has
> original jurisdiction,

> (3) the district court has dismissed all claims over
> which it has original jurisdiction, or

> (4) in exceptional circumstances, there are other
> compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c)(1)-(4).  Plaintiff makes a strong argument

that the scope of these factors is limited and that the factors

do not apply in this situation.  (Pl.'s Br. (Doc. 23) at 4-5.)

However, this court finds several reasons to believe that

the allegedly tortious action of Defendant Bynum would

"substantially predominate[]" over the FLSA claim, the claim

over which this court has original jurisdiction.  First, this

court notes again that the facts supporting Plaintiff's state

law claims are completely distinct from those supporting her

FLSA claim.  Second, the facts supporting Plaintiff's state law

claims are more inflammatory than those supporting her FLSA

claim.  Third, Plaintiff seeks punitive damages under the state

law claims, requiring a different standard of proof than what is

required under Plaintiff's FLSA claim.  Based on these findings, this court declines to exercise supplemental jurisdiction over Plaintiff's state law claims, even if it were allowed to exercise supplemental jurisdiction pursuant to § 1367(a).

**IV.**   <u>**CONCLUSION**</u>

**IT IS THEREFORE ORDERED** that Defendants' Second Motion to Dismiss (Doc. 17) is **GRANTED IN PART** and **DENIED IN PART**.

As to Plaintiff's Sixth Claim, the FLSA claim, Plaintiff has alleged sufficient facts to raise a plausible claim for relief against all Defendants, and Defendants' Second Motion to Dismiss is **DENIED** as to this claim.  However, this court will not exercise supplemental jurisdiction over Plaintiff's First, Second, Third, Fourth, and Fifth claims; Defendants' Second Motion to Dismiss is accordingly **GRANTED;** and these claims are **DISMISSED WITHOUT PREJUDICE.**  This dismissal is without prejudice to permit Plaintiff to refile these claims in state court should she so choose.

**IT IS FURTHER ORDERED** that Defendants' First Motion to Dismiss (Doc. 13) is **DENIED AS MOOT.**

This the 25th day of February, 2015.

_____
United States District Judge

-24-